UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. CROOKS,                                   Case No. 12-13365

        Plaintiff,                              Paul D. Borman
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Michael Hluchaniuk
                                                    United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 19)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On July 31, 2012, plaintiff Robert L. Crooks filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Paul D. Borman referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability insurance benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 19).

### B.    Administrative Proceedings

Plaintiff filed the instant claim for disability and disability insurance benefits on September 21, 2009, alleging that he became disabled on June 18, 2008.  (Dkt.

10-5, Pg ID 188-89).  The claim was initially disapproved by the Commissioner on February 10, 2010.  (Dkt. 10-3, Pg ID 113).  Plaintiff requested a hearing and on October 27, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Anthony R. Smereka, who considered the case de novo.  (Dkt. 10-2, Pg ID 76-111).  In a decision dated January 25, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 59-71).  Plaintiff requested a review of this decision on March 7, 2011.  (Dkt. 10-2, Pg ID 56-57).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 20, 2012, denied plaintiff's request for review.  (Dkt. 10-2, Pg ID 50-52); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1970 and was 37 years of age on the alleged disability onset date and 40 years old at the time of the administrative hearing. (Dkt. 10-6, Pg ID 206). Plaintiff past relevant work history includes positions as a welder, stock clerk, newspaper deliverer, packer, machine operator, and foundry worker. (Dkt. 10-2, Pg ID 102-03; Dkt. 10-6, Pg ID 219-34). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 10-2, Pg ID 64). At step two, the ALJ found that plaintiff's arthritis of the knees and depression were "severe" within the meaning of the second sequential step. (*Id.*). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 10-2, Pg ID 64-66). The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform a range of light level work, except that: he cannot climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; he is not limited in his ability to crawl; he cannot work with the public; and he can have no more than occasional contact with others and perform no more than unskilled work. (Dkt. 10-2, Pg ID 66-69).

At step four, the ALJ found that plaintiff was unable to perform his past

relevant work, which was classified as performed at the medium exertional level or as semi-skilled work performed at the heavy exertional level. (Dkt. 10-2, Pg ID 69). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 10-2, Pg ID 70-71).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ failed to properly weigh and consider all of the record evidence and thus made an erroneous RFC determination. According to plaintiff, the ALJ improperly weighed the opinions of plaintiff's treating physicians and rejected those opinions without providing good reasons. Plaintiff contends that the ALJ contradictorily rejected part of Dr. Michael Watt's report, while also relying on other parts of the same report. Plaintiff underwent a psychiatric evaluation with Dr. Watts, a psychiatrist with Western Wayne Family Health Center, in September 2010. (Dkt. 10-7, Pg ID 415-18). Plaintiff reported a long history of depression and Dr. Watts observed that plaintiff's appearance was appropriate, his thought process logical and organized, his mood was depressed and anxious, his affect constricted, and he was fully oriented with intact memory, fair judgment, and good insight. (*Id.*). Dr. Watts diagnosed plaintiff with Major Depression-Recurrent, with a fair prognosis, and assigned him a Global Assessment of Functioning ("GAF") Scale score of 55, with the highest GAF in the

past year of 60, and prescribed individual therapy and Cymbalta and Desyrl. (*Id.*).

Plaintiff argues that the ALJ contradictorily accepted part of Dr. Watts'
report–that plaintiff's depression resulted in functional limitations manifested by
frequent crying spells, limited contact with friends, and feelings of anger and
worthlessness and that precluded plaintiff from employment that would require
work with the general public– but he also dismissed Dr. Watts' finding that
plaintiff had a GAF score of 55, was likely to miss more than 4 days of work a
month, and that his depression had already, or was likely to continue for 12
months.  Plaintiff further contends that Dr. Watts' findings were similar to those of
Dr. Terrance A. Mills, Ph.D., who performed a consultative psychiatric evaluation
of plaintiff on January 15, 2010.  (Dkt. 10-7, Pg ID 367-70).  Dr. Mills diagnosed
plaintiff with Major depressive disorder: Recurrent, and assigned him a GAF score
of 50, with a guarded prognosis.  (*Id.*).  According to plaintiff, despite Dr. Watts'
findings, supported by Dr. Mills' findings, the ALJ improperly discounted Dr.
Watts' opinion in favor of the opinion of the state agency reviewing mental health
practitioner, Dr. Blaine Pinaire, Ph.D., who opined that plaintiff had moderate
limitations in understanding, memory, sustained concentration and persistence of
effort, socialization and adaptation, and was capable of unskilled work.  (Dkt. 10-7,
Pg ID 371-96).  Plaintiff contends that Dr. Pinaire's findings of moderate
limitations contradict those of Dr. Watts of significant limitations in the same

5

functional areas, and that the ALJ should have deferred to Dr. Watts as plaintiff's treating physician.  In addition, plaintiff argues that his lack of treatment is not a reliable indicator of the severity, or lack thereof, of his depression because mental illness by itself often affects an individual's ability to seek treatment.  *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).

Plaintiff argues that the ALJ also improperly dismissed the opinion of his other treating physician, Dr. Elrington that plaintiff was only capable of performing employment that allowed him to sit, stand, or walk for less than two hours in an eight hour workday, shift position at will, take unscheduled breaks, elevate his legs to 50% of the workday, rarely lift or carry 10 pounds or less, rarely stoop or twist, and never crouch, squat or climb ladders or stairs.  (Dkt. 10-7, Pg ID 409-12).  Plaintiff claims the ALJ erred in finding that Dr. Elrington's opinion appeared "overly restrictive" and unsupported by objective documentation and was contradicted by "substantial medical evidence to the contrary" because he failed to offer such contrary evidence supporting his finding.  According to plaintiff, he has a documented history of severe knee pain, even requiring bilateral knee surgery.  Further, plaintiff testified at the hearing that his knees had become so painful that he stopped driving and had to use a grocery cart to support himself when he tried to walk.  (Dkt. 10-2, Pg ID 95, 97).  Plaintiff contends that the ALJ's opinion is

6

based more on "playing doctor" than supporting his opinion with contradictory evidence.

Plaintiff also argues that the ALJ failed to consider plaintiff's impairments in the aggregate, as required by 20 C.F.R. § 404.1523 and *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 787 (6th Cir. 2009), because he failed to consider how plaintiff's obesity impacts his other impairments, as directed by Social Security Ruling ("SSR") 02-1p.  The ALJ failed to incorporate or even consider plaintiff's obesity at Step Two of the sequential evaluation or in his RFC determination.  The ALJ failed to consider how plaintiff's obesity exacerbated his arthritis pain, and the fact that the records indicate that plaintiff's obesity both caused and compounded his arthritis and depression.  (Dkt. 10-6, Pg ID 243; 10-7, Pg ID 415).  Plaintiff contends the ALJ evaluated the record evidence in a piecemeal fashion, ignoring how each condition affected and exacerbated the others, and how mental impairments can increase physical pain and limitations.

Finally, plaintiff argues that the ALJ made an improper credibility finding and ignored the directives of SSR 96-7p, instead relying on boilerplate language. The ALJ explained that while "the medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above

7

residual functional capacity assessment." (Dkt. 10-2, Pg ID 68).  The Sixth Circuit has previously criticized ALJs' use of this boilerplate language.  *See Dragon v. Comm'r of Soc. Sec.*, 470 Fed. Appx. 454, 466 (6th Cir. 2012).  Further, the ALJ does not explain how the medical evidence supports his credibility finding and fails to conform his credibility finding to SSR 96-7p.  Thus, plaintiff concludes, the ALJ's decision is flawed on multiple fronts and warrants reversal or remand.

**B.**   **Commissioner's Motion for Summary Judgment**

The Commissioner contends that the ALJ's finding that plaintiff could perform a restricted range of light work is supported by substantial evidence.  The ALJ recognized that plaintiff's knee problems affected his mobility and thus found that he would be unable to climb ladders, ropes or scaffolds, and only occasionally climb ramps or stairs, balance, stoop, kneel or crouch.  (Dkt. 10-2, Pg ID 66).  The Commissioner also argues that the ALJ credited plaintiff's complaints about his mental limitations by restricting him from working with the public and no more than occasional contact with others and by limiting him to no more than unskilled work.  (*Id.*).

The Commissioner contends that substantial evidence supports the ALJ's findings.  The ALJ relied on Dr. Mills' January 2010 report, which noted that plaintiff was not involved in any type of mental health counseling and had never been hospitalized for psychiatric reasons, that plaintiff was positive, friendly,

8

cooperative and responsive during the examination, and that plaintiff was oriented and his responses were "reality based." (Dkt. 10-7, Pg ID 367-70). Dr. Mills also noted that plaintiff expressed good insight into his condition and had intact memory, and his ability to calculate, think abstractly, and exercise judgment were within normal limits. (*Id.*). Dr. Mills opined that plaintiff's ability to interact with co-workers, supervisors, and the public appeared mildly impaired and that plaintiff retained the ability to understand, retain, and follow simple instructions, and perform basic, routine and tangible tasks. (*Id.*) The Commissioner contends that Dr. Mills' opinion does not reflect disabling symptoms and provide support for the ALJ's determination that plaintiff could perform unskilled work.

The Commissioner also argues that the ALJ properly relied on the mental functional capacity report prepared by Blaine Pinaire, Ph.D., a psychologist who reviewed plaintiff's medical record for the state agency. (Dkt. 10-7, Pg ID 393-96). As part of his assessment, Dr. Pinaire rated plaintiff's ability to perform twenty mental tasks, and found that plaintiff was "not significantly limited" in his ability to perform twelve tasks and only moderately limited in his ability to perform eight mental tasks. (*Id.*). Based on these findings, Dr. Pinaire concluded that plaintiff was capable of performing unskilled tasks. (*Id.*). The Commissioner contends that Dr. Pinaire's opinion is substantial evidence supporting the Commissioner's RFC assessment.

The Commissioner states that the ALJ also noted that plaintiff began attending monthly counseling sessions for his depression at Western Wayne Family Health Center in August 2010, and that plaintiff's counselor, Michael Watts, Ph.D., completed a mental capacity questionnaire on plaintiff after only three counseling sessions. (Dkt. 10-7, Pg ID 420-24).[1] Dr. Watts noted that plaintiff had appropriate appearance, good eye contact, a cooperative attitude, and a depressed and anxious mood, but good speech and a logical thought process with intact memory and fair judgment. (*Id.*). Dr. Watts opined that plaintiff would have difficulty with tasks, but could perform simple instructions, sustain an ordinary routine without supervision, ask simple questions, and accept instructions. (*Id.*). Dr. Watts further opined that plaintiff could satisfactorily remember work-like procedures, understand and remember very short and simple instructions, and respond appropriately to changes in the work setting. (*Id.*). Dr. Watts indicated that plaintiff had serious limitations but would not be entirely precluded from maintaining attention for two-hour segments, completing a normal workday and workweek without interruption, performing at a consistent pace without an unreasonable number and length of rest periods, or dealing with normal stress. (*Id.*). Dr. Watts also opined, however, that plaintiff would be unable to maintain

---

[1] The Commissioner notes that it is not clear whether Dr. Mills completed the questionnaire because the opinion notes that it was "prepared by" Michelle Duprey, LMSW, a behavioral health specialist. (Dkt. 10-7, Pg ID 424).

regular attendance and be punctual within customary tolerances due to his sleep problems and pain, and that plaintiff would be absent from work for more than four days per month.  (*Id.*).

According to the Commissioner, the ALJ properly partially credited Dr. Watts' opinion that plaintiff had difficulty with complex tasks by limiting him to unskilled work, which is consistent with Dr. Pinaire's opinion.  Further, the ALJ gave good reasons for discounting Dr. Watts' opinion that plaintiff would regularly miss work–namely, that the opinion was not based on any previous record of treatment, as Dr. Watts only treated plaintiff twice before completing the November 2010 questionnaire and he did not provide any explanation for his opinion, and the opinion was inconsistent with other medical opinions of record, including Dr. Mills' and Dr. Pinaire's opinions.

The Commissioner further contends that the ALJ's evaluation of plaintiff's physical impairments is supported by substantial evidence.  The ALJ acknowledged that plaintiff has arthritis in his knees, but also that his range of motion in his knees improved after his June 2008 surgery and that plaintiff received only conservative treatment of his knees following surgery.  (Dkt. 10-7, Pg ID 404).  An August 2010 review of plaintiff showed that he had normal crepis in both knees with no swelling or masses, full range of motion but pain with the friction/crepetations.  (Dkt. 10-7, Pg ID 405-07).  In October 2010, Jiab Suleiman,

11

D.O., an orthopedic surgeon, noted that plaintiff was "doing okay" with only mild pain in his knees.  (Dkt. 10-7, Pg ID 269).  The Commissioner argues that the ALJ credited plaintiff's complaints of pain by placing postural limitations on his ability to climb, balance, stoop, kneel, and crouch.  (Dkt. 10-2, Pg ID 66-67).  The Commissioner further contends that the ALJ properly discounted the opinions of plaintiff's physician at the Western Wayne Family Health Center who opined that plaintiff could walk one city block, sit for twenty minutes at a time, stand for five minutes at a time for a total of less than two hours in a day, lift ten pounds or less and could never crouch/squat or climb ladders and stairs.  (Dkt. 10-7, Pg ID 409-12).  The ALJ gave this opinion limited weight, finding it is "overly restrictive" and not supported by any objective documentation.  (Dkt. 10-2, Pg ID 68).  The Commissioner also argues that plaintiff's subjective complaints of pain failed to support the physician's opinion because plaintiff failed to provide any objective evidence indicating that his knee problems were disabling, such as x-rays or other laboratory results showing that his knee condition deteriorated after surgery. According to the Commissioner, the ALJ provided several good reasons for discounting the unsupported opinions provided by the treating physicians and reasonably cited the contrary evidence in the record he relied upon and thus the ALJ's decision was well within the zone of reasonable choice and the ALJ's decision should be affirmed.

The Commissioner also argues that plaintiff has not shown that his obesity resulted in functional limitations greater than the ALJ found.  According to the Commissioner, there is no medical record evidence demonstrating a further reduction in plaintiff's ability to perform routine movements directly attributable to his weight and indeed no opinion demonstrating that plaintiff's obesity produced greater limitations.  Accordingly, the ALJ's evaluation of plaintiff's impairments or restrictions is not erroneous.

Finally, the Commissioner argues that the ALJ reasonably assessed plaintiff's credibility, noting that an ALJ's finding concerning the credibility of an applicant is entitled to great weight and deference.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  The ALJ agreed that plaintiff had physical and mental limitations, but not any more than provided by his RFC assessment.  (Dkt. 10-2, Pg ID 66).  Plaintiff failed to produce any treatment records demonstrating that he had greater limitations than the ALJ found, and the ALJ noted that plaintiff's physical condition had improved with surgery and that he was able to control his knee pain with medication.  (Dkt. 10-2, Pg ID 67-68).  Further, while plaintiff's depression caused some functional problems, Dr. Mills' clinical findings failed to reveal a degree of pathology that would reasonably support the severity of plaintiff's subjective complaints.  (*Id.*).  The ALJ also considered plaintiff's daily activities, noting that plaintiff did not require special reminders to take care of

13

himself, take medication, or go out. (Dkt. 10-2, Pg ID 68). The ALJ further considered the absence of any significant mental health treatment, noting that plaintiff did not seek counseling until August 2010. (Dkt. 68). Thus, contrary to plaintiff's allegation, the ALJ provided more than just "boilerplate language" and provided specific reasons in support of his credibility finding. The Commissioner concludes that while plaintiff may not agree with the ALJ's credibility assessment, he has not provided a basis for overturning the finding.

### D.    Plaintiff's Reply Brief

Plaintiff responds that the ALJ improperly weighed and discounted his treating physicians' opinions. According to plaintiff, the ALJ erroneously incorporated some of Dr. Watts' opinions but then conveniently chose to discredit the potentially disabling reports, including a GAF score of 55, a likelihood that plaintiff would miss more than four days of work a month, and that his depression was likely to last for twelve months. Plaintiff complains that the ALJ was impermissibly "picking and choosing" which parts of Dr. Watts' report to rely on, which runs counter to the Sixth Circuit's admonition that ALJ's must not substitute their own judgment for that of the treating physician and thus play doctor. *See Meece v. Barnhart*, 2006 U.S. App. LEXIS 20476, at *23 (6th Cir. 2006) (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Plaintiff also argues that the ALJ ignored the directives of SSR 96-7p when

assessing plaintiff's credibility, improperly relying on boilerplate language in his

ultimate decision.  Plaintiff contends that the "minimal functioning" the ALJ cited

in support of his credibility assessment does not provide proof that plaintiff is able

to work and that his subjective complaints of pain are not credible.  Plaintiff argues

that he was still complaining of knee pain for several months following his

surgery, and thus there is no credible evidence that his knee condition improved

following surgery, and plaintiff testified at the hearing that his knees had become

so painful that he stopped driving and had to use a grocery cart to support himself

when he tried to walk.  According to plaintiff, the ALJ erroneously used the fact

that plaintiff is able to leave his home as probative evidence that he is not disabled.

Thus, plaintiff concludes, this Court should reverse the Commissioner's findings

and award benefits, or in the alternative, remand this matter for further

proceedings.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

16

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

17

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

18

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that

"significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the

20

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

    If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    Single Decisionmaker

    In this case, the single decisionmaker ("SDM") model was used pursuant to

20 C.F.R. §§ 404.1406(b)(2), 404.906(b)(2).  This regulation provides streamlined

procedures as an experiment, in which State Agency disability examiners may

decide cases without documenting medical opinions from State Agency medical

consultants.  The "single decisionmaker model" was an experimental modification

of the disability determination process that happens to have been used in Michigan.

*See Covey v. Comm'r of Soc. Sec.*, 2013 WL 462066, at *10 (E.D. Mich. Jan. 16,

2013), *adopted by* 2013 WL 461535 (E.D. Mich. Feb. 7, 2013) (citation omitted).

This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id.*  Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants.  *Id.*

The Programs Operations Manual System ("POMS") requires that it "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels."  POMS DI § 24510.05.  In this case, there was a "Disability Determination Transmittal" form and a "Physical Residual Functional Capacity Assessment" ("PFRCA") completed by an SDM, Miriam Sherwood.  (Dkt. 10-3, Pg ID 113; Dkt. 10-7, Pg ID 371-78).  Thus, no medical opinion was obtained at this level of review, in accordance with the model.

The ALJ here found at step three of the sequential analysis that plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments, and stated "I have considered listing 1.03, reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, which is not met because the claimant retains the ability to ambulate effectively within twelve months of his surgery as evidence by his medical records."  (Dkt. 10-2, Pg ID 64-65).  However, the ALJ does not discuss, in his opinion, whether

22

plaintiff's physical impairments, alone or in combination, medically equal a listing.

(*Id.*).  While the ALJ did not expressly rely on the opinions of the SDM, Ms.

Sherwood, which would have been wholly improper, the lack of any medical

opinion on the issue of equivalence is an error requiring remand.  As recognized in

*Stratton v. Astrue*, — F. Supp.2d —, 2012 WL 1852084 (D.N.H. 2012), SSR 96-6p

describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight.*

*Stratton*, 2012 WL 1852084, at *11-12 (quoting SSR 96-6p) (emphasis added); *see
also Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's

impairment equals a listing is a medical judgment, and an ALJ must consider an

expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of
Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the

opinion of a medical expert is required before a determination of medical

equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011

23

WL 4841091, at *1 (E.D. Wis. Oct. 12, 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explained that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter.  *Stratton,* 2012 WL 1852084 at *12 (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. May 23, 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted)).  This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form.  *Id.* (citing SSR 96-6p) (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831- U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D. .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."), *adopted by* 2006 WL 839494 (D. Me. Mar. 30, 2006).

24

In this case, there is no such signature on the Disability Determination Transmittal Form or the PRFCA form. (Dkt. 10-3, Pg ID 113; 10-7, Pg ID 371-78).[2]  The great weight of authority[3] holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton*, 2012 WL 1852084 at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record), *adopted by* 2010 WL 2103637 (W.D. Wash. May 25, 2010); *Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").  While courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM in other cases, *see Gallagher v. Comm'r of Soc. Sec.*, 2011 WL 3841632 (E.D. Mich. Mar. 29, 2011), *adopted by* 2011 WL 3841629 (E.D. Mich. Aug. 30, 2011) and *Timm v. Comm'r of Soc. Sec.*, 2011 WL 846059

---

[2] The undersigned notes that the DDT was signed by Blaine J. Pinaire, Ph.D, but Dr. Pinaire opined only as to plaintiff's mental limitations in the Psychiatric Review Technique form and the Mental Residual Functional Capacity Assessment form, and has offered no opinion as to plaintiff's physical limitations.  (Dkt. 10-7, Pg ID 379-96).

[3] In *Stratton*, the court noted that a decision from Maine "stands alone" in determining that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Stratton*, 2012 WL 1852084 at *12 (citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n.3 (D. Me. Oct. 31, 2003)).

(E.D. Mich. Feb. 14, 2011), *adopted by* 2011 WL 845950 (E.D. Mich. Mar. 8, 2011), the undersigned does not find these cases persuasive.  In both cases, the court concluded that because the regulations permitted an SDM to make a disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use. However, nothing about the SDM model changes the ALJ's obligations in the equivalency analysis. *See Barnett*, 381 F.3d at 670 ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ *must* consider an expert's opinion on the issue.") (emphasis added, citing 20 C.F.R. § 1526(b)); *Retka*, 1995 WL 697215, at *2 ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).  Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified *the ALJ's* obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases.  Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments.  Rather, the

undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which does not otherwise appear to be modified by the SDM model. *See also Covey*, 2013 WL 462066, at *13 (remanding matter so ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence); *see also Harris v. Comm'r of Soc.* Sec., 2013 WL 1192301 (E.D. Mich. Mar. 22, 2013) (same); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL 766180 (E.D. Mich. Feb. 4, 2013) (same), *adopted by* 2013 WL 773017 (E.D. Mich. Feb. 28, 2013); *Maynard v. Astrue*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.").

While there is support for the proposition that such an error can be harmless and the undersigned is not necessarily convinced that plaintiff can show that his physical impairments satisfy the equivalency requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. Feb. 6, 2012). For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence. In addition, given these conclusions, plaintiff's credibility will necessarily require re-evaluation.

27

### 2.    Plaintiff's remaining arguments

Because this case is being remanded for the reasons set forth above, there is no need to fully discuss plaintiff's remaining arguments.  Even so, because the issues plaintiff raises are likely to arise on remand, the undersigned addresses them briefly.

### a.    Treating physician opinions

Plaintiff argues that the ALJ failed to properly evaluate the medical record evidence and therefore the ALJ's residual functional capacity finding failed to accurately portray plaintiff's impairments and functional limitations. The assessment of the medical evidence conducted at a hearing is particularly important at step five of the evaluation of a disability claim because the RFC articulated by the ALJ will be used by the vocational expert ("VE") to assess the claimant's ability to perform work.  Here, the ALJ considered the entire case record, discussed plaintiff's assessment of his own deficits, and reviewed and discussed the medical opinions of the examining and consulting physicians and examiners in finding that plaintiff was not disabled at step five of the sequential evaluation because he could perform a significant number of jobs in the national economy.  The ALJ recognized that plaintiff had knee problems affecting his mobility and accordingly found that he would be unable to climb ladders, ropes or scaffolds, and only occasionally climb ramps or stairs, balance, stoop, or crouch.  (Dkt. 10-2, Pg ID

67).  He noted that treatment notes showed an improved range of motion, normal crepis in both knees with no swelling or masses and some pain following surgery. However, the ALJ discounted the opinion of Dr. Elrington, plaintiff's physician at the Western Wayne Family Health Center, because the doctor failed to provide objective documentation, such as clinical findings, to support his restrictive RFC assessment that plaintiff was only capable of performing employment that allowed him to sit, stand, or walk for less than two hours in an eight hour workday, shift position at will, take unscheduled breaks, elevate his legs to 50% of the workday, rarely lift or carry 10 pounds or less, rarely stoop or twist, and never crouch, squat or climb ladders or stairs.  (Dkt. 10-7, Pg ID 409-12).  The ALJ further credited plaintiff's complaints that he had difficulty in social settings and plaintiff's difficulty performing complex or detailed work and restricted him from working with the public and no more than occasional contact with others, and limiting him to unskilled work.  The ALJ relied on the opinions of Drs. Mills and Pinaire that plaintiff was capable of performing unskilled work, but gave limited weight to the opinion of Dr. Watts that plaintiff would be absent from work more than four days per month and his depressive symptoms have lasted or are expected to last more than twelve months because that opinion is not based on any previous record of treatment and is inconsistent with other medical opinions of record.  (Dkt. 10-2, Pg ID 67-69).

29

Plaintiff contends that the ALJ did not give proper weight to the opinions of his treating physicians, Drs. Watts and Elrington, that plaintiff could not perform gainful activity. The ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 3674188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's condition is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544. When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. However, "[t]he determination of disability is

30

[ultimately] the prerogative of the [Commissioner], not the treating physician."

*Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985)).  "When a treating physician . . . submits an opinion on an issue reserved to

the Commissioner–such as whether the claimant is 'disabled' or 'unable to

work'–the opinion is not entitled to any particular weight."  *Turner v. Comm'r of*

*Soc. Sec.*, 2010 WL 2294531, at *4 (6th Cir. June 7, 2010).  "Although the ALJ

may not entirely ignore such an opinion, his decision need only explain the

consideration given to the treating source's opinion."  *Id.* (internal quotation and

citation omitted).  In *Turner*, the Sixth Circuit held that the ALJ adequately

addressed a treating physician's opinion that plaintiff was "unable to work" and

was not "currently capable of a full-time 8-hour workload" when the ALJ stated

that it was an opinion on an issue reserved for the Commissioner.  *Id.* at *5.

Plaintiff accuses the ALJ of improperly "cherry-picking" portions of Dr.

Watts' opinion regarding plaintiff's mental functional limitations.  It is generally

recognized that an ALJ "may not cherry-pick facts to support a finding of non-

disability while ignoring evidence that points to a disability finding."  *Smith v.*

*Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio Mar. 11, 2013) (citing

*Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010) (citation omitted)).  Yet,

"the ALJ does not 'cherry pick' the evidence merely by resolving some

inconsistencies unfavorably to a claimant's position."  *Id.* (quoting *Solembrino v.*

31

*Astrue*, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011)).  The undersigned cannot conduct a *de novo* review of the record evidence, and the findings of the ALJ are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citation omitted); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.") (citation omitted).  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  Thus, it is not uncommon in disability cases for there to be some inconsistencies in the record.  It is the duty of the ALJ to resolve any inconsistencies in the evidence, and the ALJ does not "cherry pick" the evidence merely by resolving some inconsistencies unfavorably to a claimant's position.  *See Smith*, 2013 WL 943874, at *6 ("Rather than describing the ALJ's actions as 'cherry-picking,' the Sixth Circuit has explained that it could be more neutrally described as 'weighing the evidence.'") (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)).

The ALJ partially credited Dr. Watts' opinion that plaintiff had difficulty with complex tasks by limiting him to unskilled work, and gave good reasons for

discounting Dr. Watts' opinion that plaintiff would be absent from work more than four days per month as not based on any previous record of treatment and inconsistent with other medical opinions of record. Dr. Watts only treated plaintiff twice prior to completing the November 2010 questionnaire and never treated plaintiff during a period while he was working. The Sixth Circuit has recognized that "depending on the circumstances, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 506-07 (6th Cir. 2006) (citing *Cunningham v. Shalala*, 880 F. Supp. 537, 551 (N.D. Ill. 1995) (where physician saw claimant five times in two years, it was "hardly a foregone conclusion" that his opinion should be afforded great weight)). Further, the ALJ found that Dr. Watts' opinion was inconsistent with the opinions of Drs. Mills and Pinaire that plaintiff was capable of performing unskilled work. Although Dr. Pinaire is a state agency reviewing physician, state agency doctors are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." *See* 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I). "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *3 (1996); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

33

399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord greater weight to state agency physicians over Blakley's treating sources was not, by itself, reversible error.").  The ALJ explained that he gave more weight to Dr. Pinaire's opinion because "it is based on a complete mental assessment of [plaintiff's] medical records of evidence and consistent with [plaintiff's] alleged mental limitations caused by his depression."  (Dkt. 10-2, Pg ID 69).

Plaintiff also argues that the ALJ impermissibly ignored his GAF scores in reaching his RFC finding.  "GAF examinations measure psychological, social and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).  It is well-recognized in the Sixth Circuit that GAF scores are a subjective rather than objective assessment and, as such, are not entitled to any particular weight.  *See Kornecky*, 167 Fed. Appx. at 511; *see also Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) ("GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.").  The Sixth Circuit has stated that "we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF

34

score in the first place." *Kornecky*, 167 Fed. Appx. at 511.  The Commissioner "has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings."  *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006) (internal quotations omitted).  And, in fact, the Sixth Circuit has held that the ALJ's complete failure to discuss the GAF scores assigned to plaintiff does not render his analysis unreliable.  *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ's failure to refer to GAF score did not make his RFC analysis unreliable); *see also Linebarger v. Comm'r of Soc. Sec.*, 2012 WL 3966297, at *7-8 (E.D. Mich. July 18, 2012) (ALJ's failure to mention to GAF scores was not legal error, and noting further that the ALJ did explicitly discuss the reports that contained the scores), *adopted by* 2012 WL 3966277 (E.D. Mich. Sept. 11, 2012).  The ALJ here did not ignore the GAF scores, but instead noted that Dr. Watts opined that plaintiff had a GAF score of 55 in 2010 and 60 in the previous year and also noted that a GAF of 55-60 denote "moderate symptoms . . . or moderate difficulty in social, occupational or school functioning," which is consistent with the ALJ's finding that plaintiff had moderate difficulties in social functioning and concentration, persistence and pace.  (Dkt. 10-2, Pg ID 65, 69).  Thus, the ALJ properly evaluated the medical evidence, including plaintiff's GAF scores, in reaching his RFC

35

determination.

As to the ALJ's treatment of Dr. Elrington's opinion that plaintiff was only capable of performing employment that allowed him to sit, stand, or walk for less than two hours in an eight hour workday, shift position at will, take unscheduled breaks, elevate his legs to 50% of the workday, rarely lift or carry 10 pounds or less, rarely stoop or twist, and never crouch, squat or climb ladders or stairs (Dkt. 10-7, Pg ID 409-12), the undersigned concludes that the ALJ properly did not give his opinion as to plaintiff's functional limitations controlling weight.  There is virtually no support in the record supporting the severe limitations imposed on plaintiff and there is little objective medical evidence, test results, etc. to support his full opinion.  The ALJ noted that Dr. Elrington's opinion is inconsistent with plaintiff's routine and conservative treatment of his knees after undergoing surgery in June 2008, and the medical records indicate plaintiff's range of motion in his knees improved after surgery and Dr. Suleiman, an orthopedic surgeon, noted in October 2010 that plaintiff was "doing okay" with only mild pain in his knees.

A review of the ALJ's findings here reveals that he properly assessed plaintiff's treating physicians' opinions in forming his RFC finding, including Dr. Watts' and Elrington's opinions, plaintiff's treatment notes, plaintiff's improvement, and plaintiff's daily activities–all of which provide substantial evidence supporting the ALJ's findings.

36

### b.   Obesity

Plaintiff complains that the ALJ did not properly consider his obesity during the sequential evaluation, and did not comply with the procedure outlined in SSR 02-1p for discussing how obesity affects a claimant's ability to work.  Plaintiff contends that his height of 5' 8" and weight of 310 pounds results in a BMI of 47.1, placing him in the SSR 02-1p Level III "extreme obesity" category.   The Commissioner responds that the ALJ limited plaintiff to light work with postural limitations and plaintiff has not shown that his obesity resulted in functional limitations greater than the ALJ found.

Obesity, by itself, does not constitute a disability and is not qualified as a "listed impairment."  SSR 02-1p, 2000 WL 628049, at *1.  "Social Security Ruling 02-01p does not mandate a particular mode of analysis.  It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations."  *See Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2008).  Accordingly, the Sixth Circuit has held compliance with SSR 02-1p only requires demonstration that the ALJ "considered" obesity.  *See id.* ("It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.").  Further, the administrative findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting

from the condition.  *Coldiron v. Comm'r of Soc. Sec.*, 2010 WL 3199693, at *7

(6th Cir. Aug. 12, 2010) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir.

2004)).

Here, the ALJ makes no reference at all to plaintiff's obesity in his

discussion of the medical evidence, in his RFC finding, or anywhere else in his

decision, despite record evidence that plaintiff was diagnosed with obesity (Dkt.

10-7, Pg ID 298, 312, 407, 409), and thus it is not clear to the undersigned that the

ALJ sufficiently accounted for the effect that obesity has on plaintiff's depression

and his knee arthritis.  While there is no medical opinion of record that plaintiff is

significantly limited as a result of his obesity, the complete exclusion of any

mention of plaintiff's obesity makes it impossible for the undersigned to tell if the

ALJ actually considered this condition in formulating the RFC.  Given the

complete omission of any mention of plaintiff's obesity in the ALJ's decision, the

undersigned finds that the ALJ erred by failing to consider the impact of this

condition as required by SSR 02-1p.  Accordingly, on remand, the ALJ should

consider the affect of plaintiff's obesity on his physical and mental limitations.  *See*

*Heighton v. Comm'r of Soc. Sec.*, 2013 WL 214695 (S.D. Ohio Jan. 18, 2013)

(ALJ erred by failing to address plaintiff's obesity or its impact on plaintiff's

RFC), *adopted by* 2013 WL 449893 (S.D. Ohio Feb. 6, 2013); *Riley v. Astrue*,

2012 WL 2367546, at *16 (N.D. Ohio June 21, 2012) (remanding to the

Commissioner for the purpose of considering, evaluating and expressly articulating the effects, if any, of plaintiff's obesity on his RFC and disability), *adopted by* 2013 WL 26112 (S.D. Ohio Jan. 2, 2013).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for further proceedings pursuant to sentence four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 8, 2013                          s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 8, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>William W. Watkinson, Jr. Frederick J. Daley, Jr., Susan K. DeClercq, AUSA, and the Commissioner of Social Security</u>.

s/Tammy Hallwood<br>
Case Manager<br>
(810) 341-7850<br>
tammy_hallwood@mied.uscourts.gov
